IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLOTA R.M.<br><br>       Plaintiff,<br>v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,[1]<br><br>       Defendant. | Case No. 18-cv-2873<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carlota R.M.[2] seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits. Carlota asks the Court to reverse and remand the ALJ's decision, and the Commissioner moves for its affirmance. For the reasons set forth below, the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. BACKGROUND

Carlota's claim for disability includes alleged impairments of anxiety, arthritis, severe back pain, depression, diabetes, hypertension, and carpal tunnel syndrome. R. 68. Carlota claims that she has not engaged in substantial gainful activity since her impairment's alleged onset date of June 22, 2013. R. 69.

---

[1] Andrew M. Saul has been substituted for his predecessors, Nancy A. Berryhill, as Defendant in this case. *See* Fed. R. Civ. P. 25(d).

[2] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

Under the Administration's five-step analysis used to evaluate disability, the ALJ found that Carlota had not engaged in substantial gainful activity since her application date (step one) and that she had the severe impairments of degenerative disc disease, diabetes mellitus, hypertension, scoliosis, obesity, carpal tunnel syndrome, depression, and anxiety (step two). R. 17. At step three, the ALJ determined that she did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairment. *See* 20 CFR 404.1520(d), 404.125, and 404.1526. R. 18. At step four, the ALJ concluded that Carlota retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant could frequently climb ramps/stairs and crouch and occasionally climb ladders, ropes or scaffolds, stoop, or crawl. She can frequently use either upper extremity for fine or gross manipulation. The claimant lacks the ability to understand, remember, and carry out detailed instructions because of moderate limitations in concentration, but retains the sustained concentration necessary for simple work of a routine type if given normal workplace breaks, meaning two 15-minute breaks after two hours of work and a 30-inute break mid-shift. The claimant would be unable to maintain assemble line or production pace employment because of moderate limitations in pace, but maintains the ability to perform work permitting a more flexible pace. The claimant should experience no more than occasional changes in the work setting.

R. 21. Given this RFC, the ALJ determined that Carlota was able to perform her past relevant work as a housekeeper and cleaner. R. 25. Thus, the ALJ determined that Carlota was not disabled under 20 CFR 404.1520(f). R. 27.

On May 11, 2017, the Appeals Council denied Carlota's request for review, leaving the ALJ's March 15, 2017 decision as the final decision of the Commissioner. R. 1; *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

## II. DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Although this is a generous standard, it is not entirely uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.* In its substantial evidence review,

the Court considers the entire administrative record but does not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869. Finally, an ALJ's evaluation of a claimant's subjective symptoms will be upheld unless it is "patently wrong." *McHenry v. Berryhill*, 911 F.3d 866, 873 (7th Cir. 2018).

The ALJ denied Carlota's claim at step four of the sequential evaluation process, finding that she retains the RFC to perform her past work as a housekeeper and cleaner. Carlota challenges the ALJ's RFC determination on several grounds.

A. **Treating Physician Dr. Didenko**

Carlota's leading argument is that the ALJ erred in discounting treating physician Dr. Taras Didenko's medical opinion down to little weight. The treating-physician rule directs the ALJ to "consider *all*" of the following factors in weighing "*any* medical opinion": (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c) (emphasis added). The checklist factors are designed to help the ALJ "decide how much weight to give to the treating physician's evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The treating physician's medical opinion is entitled to "controlling weight" if the opinion is (i) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and if it is (ii) "not inconsistent with the other substantial evidence in [the] case." *Id.* An ALJ's failure to explicitly apply the checklist can be grounds for remand. *See, e.g.*, *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) ("in addition to summarizing [the treating physician's] visits and describing their treatment notes, the ALJ should explicitly consider the details of the

4

treatment relationship and provide reasons for the weight given to their opinions"); *Campbell v. Astrue*, 627 F.3d 299 (7th Cir. 2010) ("the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (remanding where the ALJ's decision "said nothing regarding this required checklist of factors."); *Wallace v. Colvin*, 193 F. Supp. 3d 939, 947 (N.D. Ill. 2016) ("the ALJ did not explicitly apply the checklist. In this Court's view, that failure alone is a ground for a remand."). Nevertheless, the Seventh Circuit has on occasion looked past this procedural error. *See, e.g.*, *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) ("our inquiry is limited to whether the ALJ sufficiently accounted for the factors in 20 C.F.R. § 404.1527"); *Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the 20 CFR § 404.1527 factors as the Seventh Circuit conducted the necessary analysis and found that the opinions were not entitled to controlling weight).

Here, the ALJ did not appropriately address the checklist's factors. The outcome of this case may have differed had the ALJ properly evaluated treating physician Dr. Didenko's medical opinion. Dr. Didenko's medical opinion is important as his medical source statement appears to have diagnosed Carlota with greater limitations than found in the ALJ's RFC finding above. Dr. Didenko's medical opinion indicated that Carlota had severe major depressive disorder and generalized anxiety that included "pervasive loss of interest in almost all activities" and "[d]ifficulty concentrating or thinking." R. 462. Dr. Didenko further noted that Carlota had "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week." R. 463. Although Dr. Didenko found no restrictions in activities of daily living, he noted marked limitations in maintaining social functioning; deficiencies of concentration, persistence or

pace resulting in failure to complete tasks in a timely manner; and extreme episodes of deterioration or decompensation in work or work-like settings which cause Carlota to withdraw from that situation or to experience exacerbation of signs or symptoms. R. 464. Dr. Didenko also opined that Carlota's psychiatric condition exacerbates her migraine headaches. R. 464. Last, Dr. Didenko's medical source statement estimated that Carlota would be absent from work more than four days per month due to the impairments of her treatment and the VE testified that absenteeism of four or more days per month would preclude Carlota's "past or any other employment in the regional or national economy." R. 63-64; R. 464.

As discussed in turn, the ALJ neither weighed the length of Carlota's treatment relationship with Dr. Didenko, nor the nature and extent of the treatment relationship, nor the physician's degree of specialization beyond noting that Dr. Didenko was a psychiatrist, nor did she weigh supportability beyond the bare statement that the opinion was entirely inconsistent with the symptoms reported in his own treatment notes. *See* R. 24-25; *see also* 20 C.F.R. § 404.1527(c).

First, the ALJ did not explicitly weigh the length and frequency of Carlota's treatment relationship with Dr. Didenko under 20 CFR § 404.1527(c)(2)(i). The regulation recognizes this factor's importance as to the weight of a treating source's medical opinion. 20 CFR § 404.1527(c)(2)(i). Under 20 CFR § 404.1527(c)(2)(i), "[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." *Id.* And that whenever "the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source." *Id.* Here, it is not clear whether the ALJ accounted for the length and frequency of Dr. Didenko's treatment relationship before she discounted his medical opinion

6

because the ALJ did not state that she had recognized that the treatment relationship started in August 2013, spanned at least six visits, and then included a mental health questionnaire completed by Dr. Didenko in October 2016. R. 358-65; R. 462-64.

Nor did the ALJ address the nature and extent of the treatment relationship. Under 20 CFR § 404.1527(c)(2)(ii), the ALJ "will look at" the treatment that the treating source provided and the type of examinations and testing that the treating source has performed or ordered from specialists. 20 CFR § 404.1527(c)(2)(ii). The regulation explains by example that an ophthalmologist who merely *notices* neck pain during eye examinations will be given less weight than that of another physician who actually treated the patient's neck pain. *Id.* Here, the ALJ's discussion of the treatment relationship is limited to mentioning that "Dr. Didenko has continued the claimant on the same medication treatment for an extended period" and that "the symptoms reported by Dr. Didenko in his opinion are not noted in his treatment records." R. 24-25. But the ALJ hardly addressed the details of Dr. Didenko's treatment in the first place, nor the medications Dr. Didenko proscribed, nor the ailments that the medications were intended to treat, nor whether Dr. Didenko had any examinations or testing (if any) performed or ordered from other specialists. Accordingly, the ALJ discounted treating physician Dr. Didenko's medical opinion without adequately addressing the nature and extent of the relationship on the record.

Second, the ALJ did not adequately address the "supportability" factor. 20 CFR § 404.1527(c)(3). Under 20 CFR § 404.1527(c)(3), the more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. *Id.* The ALJ's analysis into this factor is perfunctory: all the ALJ states is that "the symptoms reported by Dr. Didenko in his opinion are not noted in his treatment records" and that his opinion was "entirely inconsistent with the symptoms reported

7

in his own treatment notes." R. 24. The ALJ's decision does not specifically address whether Dr. Didenko's medical notes present relevant evidence through medical signs and laboratory findings that would support her medical opinion. More, the Court's review of both Dr. Didenko's medical notes and his medical opinion shows that they both indicate a diagnosis of major depressive affective disorder with features of anxiety. *Compare* R. 365 (noting history of depression and anxiety combine with daily panic attacks resulting in a diagnosis of "Major depressing affective disorder, recurrent episode, unspecified") *with* R. 462 (diagnosing severe major depressive disorder and generalized anxiety.). Without further elaboration by the ALJ, the Court is unable to understand how the ALJ believed the medical opinion and the treatment notes were "entirely inconsistent" with one another. *See* 20 CFR § 404.1527(c)(3).

Third, the ALJ's assessment of Dr. Didenko's medical opinion's consistency with the record as a whole overlooks certain documents in the record, notably, documents concerning migraines and consultative examiner Dr. Rudolph.

Regarding migraines, the ALJ's decision indicates that one reason for having discounted Dr. Didenko's medical opinion is that it stated that Carlota's psychiatric condition exacerbates her migraine headaches even though "the undersigned notes that there is *no* documented evidence showing that the claimant has received treatment for migraines." R. 24 (emphasis added). This statement made by the ALJ suggests that the ALJ did not consider how Carlota testified that she received treatment for her migraines by speaking to her doctor about how she gets them when she gets stressed or works too much. R. 46. It also disregards the August 2014 pain questionnaire completed and submitted by Carlotta that indicated that Drs. Sha[h] and/or Didenko's prescribed paraoxetine and clonazepam that relieved her migraines. R. 276-77. Consistent with her testimony, Dr. Didenko's notes show that he prescribed clonazepam in August 2013. R. 365. Thus, the ALJ's

statement that Dr. Didenko's medical opinion was inconsistent for having "*no documented evidence showing that the claimant has received treatment for migraines*" overlooks aspects of the record that suggests otherwise. R. 24 (emphasis added).

Neither did the ALJ explicitly address Dr. Rudolph's 2014 psychological consultative examination report that occurred at the behest of the Agency. Dr. Rudolph's psychological report is important because it may serve to show how Dr. Didenko's opinion's diagnoses of depression and anxiety is consistent with the record. Defendant argues that the ALJ was not required to consider Dr. Rudolph's evaluation because "he did not render an opinion requiring an assessment" because he did not offer any functional limitations in his opinion and because state agency consulting physicians – who rendered opinions that the ALJ considered – had reviewed and incorporated Dr. Rudolph's examination report. Doc. [18] at 8-9. Although an ALJ need not mention every snippet of evidence in the record, 20 CFR § 404.1527(c) provides that an ALJ "will evaluate every medical opinion" received "regardless of its source." 20 CFR § 404.1527(c); *see Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). First, the Court notes that Dr. Rudolph's psychological examination report indeed notes Carlota's certain limitations: it notes that "the opinion of this examiner [is] that the claimant **is not capable** of managing her own financial resources. **Her prognosis and her insight are limited**." R. 400 (emphasis in original). In coming to that conclusion, Dr. Rudolph made several observations relevant to Carlota's alleged mental impairments including that her "mood level reflected some mild depression," she had "some suicidal thoughts," her anxiety increases her heartrate and causes difficulty in breathing, she has "**vegetative** symptoms," and that she has difficulty sleeping at night." R. 400-3 (emphasis in original). Second, although true that Dr. Rudolph's opinion was embedded in Dr. Tin's consultative review that the ALJ considered, R. 108, the spirit of § 404.1527(c)(1) nevertheless

leads this court to direct the ALJ to address Dr. Rudolph's psychological report on remand. R. 400-3.[3] Section 404.1527(c)(1) explicitly discusses how, generally, more weight is due to a medical source who examined a claimant – such as Dr. Rudolph – than a medical source who has not examined claimant, such as non-examining agency consultative opinions. 20 CFR § 404.1527(c)(1). Further analysis and consideration of Dr. Rudolph's psychological report may result in a different outcome on remand, as one example, the inclusion of Dr. Rudolph's medical notes may lead to or support a finding that Dr. Didenko's medical opinion was consistent with the record as a whole.

Last, under the checklist, the ALJ did not elaborate on Dr. Didenko's specialization beyond recognizing that he is a psychiatrist. R. 24-25; 20 CFR § 404.1527(c)(5).

Another reason the ALJ cited in discounting Dr. Didenko's medical opinion was that Dr. Didenko had "continued the claimant on the same medication treatment for an extended period without attempting to adjust it, which would be unlikely if the claimant's limitations were of the marked and extreme severity indicated in Dr. Didenko's opinion." R. 25. Carlota argues that this finding was akin to impermissibly playing doctor and Defendant argues that this is merely the ALJ noting Carlota's prescribed medications as required. It is unclear to this Court whether the ALJ stated this as part of the 20 CFR § 404.1527(c)(3) supportability factor, as a 404.1527(c)(6) "other factor," or otherwise. Nevertheless, it is addressed herein. ALJs have been instructed repeatedly that they cannot play doctor and make their own independent medical findings. *See, e.g.*, *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical

---

[3] The Court notes that the ALJ did address the findings made by the other consultative examiner in the record, Dr. Roopa, rather than relying on the reviewing agency's medical consultant's review of Dr. Roopa's examination. R. 23; R. 406-9.

10

findings themselves."); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("[T]he ALJ seems to have succumbed to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was in-consistent with a diagnosis of mental retardation because no expert offered evidence to that effect here."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *John L. v. Berryhill*, No. 17 C 7537, 2019 WL 2601353, at *7 (N.D. Ill. June 25, 2019) (holding that an ALJ impermissibly played doctor). Although an ALJ should consider a claimant's prescribed medications as part of the objective medical evidence, this inference effectively inserted her own lay view of what would be an appropriate psychiatric pharmaceutical treatment with that of her treating physician's. *See* SSR 96-3p. Here, the ALJ does not cite any medical basis whatsoever for making an inference that a psychiatrist would adjust a patient's prescribed medication if the patient's limitations were of the marked and extreme severity. Perhaps Dr. Didenko had an alternative rationalization for a consistent pharmaceutical treatment such as a desire to avoid further foreseeable symptomatic complications that would be triggered by changing up her medications. If the ALJ wishes to draw an inference based on a treating psychiatrist's prescribed pharmaceutical treatment, the ALJ should support that inference with medical evidence rather than her own lay opinion.

For the reasons discussed above, the ALJ's decision is reversed and remanded for having improperly weighed treating physician Dr. Didenko's medical opinion. This is not a harmless error for had the treating physician's medical opinion been given greater or controlling weight, the ALJ's ultimate finding may have differed.

B.      **Outdated Non-Examining Physician Assessments**

In a footnote, Carlota argues that the ALJ's decision should be remanded because state agency psychological consultants Drs. Tin and Gotanco[4] – who rendered opinions that the ALJ considered – did not have access to a substantial portion of the record such as Dr. Didenko's mental health questionnaire that he completed on Carlota's behalf. Doc. [15] at 15; R. 19, 106-122. Here, Dr. Tin's opinion is dated May 19, 2015 and Dr. Gotanco's is dated May 20, 2015, while treating physician Dr. Didenko's relevant medical opinion is dated October 4, 2016. R. 115, 122, and 464. Additionally, much of Dr. Shah's medical notes were also submitted after the reviewing physicians made their submissions, including notes from July 2015, October 2015, December 2015 (R. 468-70), and September through November 2016. R. 465-67, 471-73, and 474-79.

An ALJ should not rely on a state agency medical consultant's medical opinion as evidence where that medical consultant has not reviewed all the pertinent evidence. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) ("the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the treating physician's] report."); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where ALJ uncritically accepted non-examining physicians' report because those physicians had not been shown the report of an MRI, explaining that the ALJ "failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence.").

In *Stage*, the Seventh Circuit held that a treating physician's "report, which diagnosed significant hip deformity, a restricted range of motion, and the need for a total left hip replacement, changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment

---

[4] The ALJ afforded "great weight" to state agency medical consultant Dr. Gotanco's opinion.

by a non-examining physician and by evaluating himself the significance of [the treating physician's] report." *Stage*, 812 F.3d at 1125. *Stage* found that the treating physician's "evaluation contained significant, new, and potentially decisive findings" that "could reasonably change the reviewing physician's opinion." *Id.* The Seventh Circuit explained that "*[i]nstead of consulting a physician*, though, the ALJ evaluated the [newly obtained] MRIs and recommendation himself" and "decided that they were 'similar' to existing evidence" that was already assessed by the non-examining physician. *Id.* (emphasis added). The Seventh Circuit reversed the ALJ for deciding that this newly-found evidence contained within the treating physician's report was "'similar' to existing evidence" and thus deciding, without the benefit of any supportive evidence, that "Stage's need for a hip replacement would not have affected her supposed ability to stand and walk for six hours a day, upon which the ALJ's denial of benefits depended." *Id.*

In *Goins*, the Seventh Circuit reversed the ALJ's decision for having "failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence." *Goins*, 764 F.3d at 680 (collecting cases). There, the Seventh Circuit explained that the ALJ's failure to submit newly obtained MRI results to non-examining consulting physicians combined with the ALJ's reliance on those physicians' conclusions led the ALJ to "play[ ] doctor (a clear no-no, as we've noted on numerous occasions) . . .[and to] summarize[ ] the results of the 2010 MRI in barely intelligible medical mumbo jumbo . . . ." *Id.* (internal citations omitted).

However, an ALJ does not commit reversable error just because he or she relied on non-examining consultative opinions that did not scrutinize certain medical evidence in the record. *See Keys v. Berryhill*, 679 F. App'x 477, 480-81 (7th Cir. 2017). In *Keys*, the Seventh Circuit held that the ALJ did not err in relying on the opinions of non-examining agency physicians who did not review two spinal MRIs showing mild and minimal narrowing or a report from the claimant's back

13

surgery. *Id.* at 481. The Seventh Circuit reasoned that "[i]f an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end," and that "Keys has not provided any evidence that the reports would have changed the doctors' opinions." *Id.* (internal citation omitted).

The instant case is more like *Stage* and *Goins* than *Keys* because the evidence that became part of the record following the state agency non-examining medical consultants' assessments could have changed the state agency doctors' medical opinions. *See Stage*, 812 F.3d at 1125; *see also Goins*, 764 F.3d at 680; *Keys*, 679 F. App'x at 480-81. For example, the state agency consultants did not review medical evidence submitted by Plaintiff's examining physicians Drs. Didenko and Shah. Had the state agency physicians reviewed Dr. Didenko's medical opinion dated October 4, 2016 contained in a mental health questionnaire, the reviewing physicians would have been afforded an opportunity to review Dr. Didenko's diagnoses of severe major depressive disorder and generalized anxiety. R. 461. The reviewing physicians would have also reviewed Dr. Didenko's many symptomatic observations including mood disturbance; pervasive loss of interest in almost all activities; sleep disturbance; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; autonomic hyperactivity; apprehensive expectation; vigilance and scanning; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; poor memory; emotional lability; social withdrawal or isolation; blunt, flat or inappropriate affect; a marked difficulty in maintaining social functioning, marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; extreme restriction in daily living due to episodes of deterioration or decompensation in work or work-like settings which cause Carlota to withdraw from that situation or to experience

exacerbation of signs or symptoms; and that Carlota's psychiatric condition exacerbates her migraine headaches. R. 461-64. More, the reviewing physicians would have been privy to Dr. Didenko's estimation that Carlota would be absent from work more than four days per month as a result of her psychiatric condition. R. 461-64. The reviewing physicians would have additionally been aware of Dr. Didenko's opinion that the preceding limitations lasted or can be expected to last for 12 months or longer. R. 463. Likewise, had the reviewing physicians had an opportunity to review and opine upon Dr. Shah's medical notes that were made part of the record following their review, they would have been alerted to Dr. Shah's assessment of lumbago, hyperlipidemia, anxiety, impaired glucose tolerance, obesity, chest discomfort, and major depressive disorder with recurrent episode. R. 465-67, 471-73, 468-70, and 474-79.

Therefore, the ALJ erred by relying on the state agency physicians' consultative opinions because evidence that became part of the record following those assessments could have changed the state agency doctors' medical opinions. It follows that this was not a harmless error.[5]

### III. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment [14] is granted and the Commissioner's Motion for Summary Judgment [17] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: July 29, 2019

_____
Sunil R. Harjani
United States Magistrate Judge

---

[5] The Court need not address the other arguments advanced by Carlota because reversal and remand are appropriate on the grounds discussed herein.